# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

FREEDOM SCIENTIFIC BLV GROUP,
LLC,

    Plaintiff,

v.                                                    Case No: 8:13-cv-569-T-30TBM

ORIENT SEMICONDUCTOR
ELECTRONICS, LTD.,

    Defendant.

## **ORDER**

    THIS CAUSE comes before the Court upon the Plaintiff Freedom Scientific BLV Group, LLC's Motion for Summary Judgment on Orient Semiconductor Electronics, Ltd.'s Counterclaim (Dkt. #34), Freedom Scientific BLV Group, LLC's Motion for Summary Judgment on its Claims in the Complaint and on Orient Semiconductor Electronics, Ltd.'s Affirmative Defenses (Dkt. #35), Defendant/Counterclaimant Orient Semiconductor Electronics, Ltd.'s Response in Opposition to the Motions (Dkt. #41), Defendant/Counterclaimant Orient Semiconductor Electronics, Ltd.'s Motion for Partial Summary Judgment (Dkt. #36) and Freedom Scientific BLV Group, LLC's Response in Opposition to the Motion for Partial Summary Judgment (Dkt. #40), Plaintiff's Motion for Leave to File a Reply Memorandum in Further Support of its Motions for Summary Judgment (Dkt. # 46) and Defendant's Response in Opposition (Dkt. # 47). Upon review and consideration, it is the Court's conclusion that the Motions should be denied.

*Background*

Plaintiff Freedom Scientific BLV Group, LLC ("Freedom") sues Defendant/Counterclaimant Orient Semiconductor Electronics, Ltd. ("OSE") for breach of contract due to its failure to fulfill eight purchase orders and requests a mandatory injunction for the return of certain equipment in OSE's possession. OSE countersues for breach of contract for unpaid invoices. On September 26, 2008, Freedom and OSE entered into a Master Manufacturing Services Agreement ("MMSA") under which OSE acted as a contract manufacturer and supplier for Freedom of certain custom products to assist the visually impaired. The MMSA has a term of three years with automatic one year renewals unless terminated upon nine months' written notice. The parties could also terminate the MMSA immediately for insolvency, liquidation, dissolution, cessation of business, and the inability or failure of the other party to perform.

The parties operated under the MMSA by having OSE provide a price quote to Freedom. If Freedom agreed on the price, it would submit a purchase order ("PO") identifying the specific products ordered, pricing, quantities, delivery schedules, and shipping instructions. The parties agreed that Freedom would pay for "excess materials" OSE purchased in order to obtain volume discounts on the materials used to fulfill a PO as long as Freedom pre-authorized the purchase in writing. Freedom was required to pay OSE in full without set off or deduction within 45 days of receipt of OSE's invoice on a PO.

Further, under the MMSA, Freedom supplied OSE with the tools, fixtures, test sets, equipment, drawings, and patterns (hereinafter referred to as "Tooling") and "golden samples" (samples of the finished product) to assist in the manufacture of specific products.

OSE held the Tooling and golden samples in its facilities in Taiwan. Once either party terminated the MMSA, OSE was required to return the Tooling within two weeks of Freedom's request to do so.

The two entities operated under the aforementioned purchasing system for four years. OSE provided its nine months' written notification of its termination of the MMSA shortly after receiving a series of eight POs from Freedom. OSE asserts that it appropriately rejected the eight POs and has no obligation to fulfill them. Freedom objects to that assertion and relies on the parties' prior course of dealing to argue that OSE "accepted" the POs and its failure to fulfill the orders constituted a material breach of the MMSA. OSE refused to fulfill the orders and Freedom in turn refused to pay the outstanding invoices due to OSE. As a result of the foregoing, OSE gave written notice of its immediate termination of the MMSA.

Freedom argues that OSE is in breach of the MMSA due to its refusal to fulfill the eight POs upon receipt as it has done in the past. Freedom also asserts that OSE has not returned all of the Tooling as requested and is therefore entitled to a mandatory injunction ordering OSE to return the Tooling in its possession. OSE filed a counterclaim against Freedom alleging breach of contract based on Freedom's failure to pay invoices in the amount of $885,367.44 for items produced, shipped and accepted by Freedom.

*Discussion*

## I. Legal Standard

Motions for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Id.* at 248. The substantive law of the claimed causes of action will determine which facts are material. *Id*.

All evidence must be examined in the light most favorable to the non-movant and all inferences must be drawn in his or her favor. *Id.* at 255. Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

A dispute about a material fact is "genuine," when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. There can be "no genuine issue as to any material fact," when there is a complete failure of proof concerning an essential element of the nonmoving party's case. *Celotex Corp*., 477 U.S. at 323. The failure of proof necessarily renders all other facts immaterial. *Id*. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Id*.

## II.  The Motions

OSE moves for partial summary judgment on Freedom's breach of contract claim and mandatory injunction claim. OSE argues that the MMSA precludes Freedom's breach of contract claim because Freedom's argument is based solely on the premise that the parties' prior course of dealings proves that OSE accepted the eight POs at issue. The MMSA's language expressly forbids the parties to rely on prior course of dealings and performance to supplement or alter the unambiguous terms of the contract. OSE argues that the contract requires formal acceptance of the POs before OSE is bound to fulfill the order.  Additionally, OSE argues that the undisputed evidence shows that it already returned all of the Tooling to Freedom and therefore the request for an injunction is moot.

Freedom moves for summary judgment arguing that there are no genuine issues of material fact regarding its claims for breach of contract of the MMSA and mandatory injunction to compel OSE to return its Tooling. Freedom argues that OSE materially breached the MMSA when it refused to fulfill the eight POs since the MMSA does not require written acceptance of the PO. Instead, it argues that since OSE already agreed upon a price for the products, "Freedom's submitting [sic] the purchase orders was a formality of prior acceptance by [OSE]." Further, since OSE consistently accepted the POs through performance without a formal submission or acceptance procedure, OSE did not have to acknowledge receipt of the purchase orders in writing.

Freedom demands damages as the non-breaching party in the form of credits for material not received, the cost of raw materials supplied to OSE and Tooling which has not been returned, reimbursement for rework of faulty manufacturing, reimbursement of

5

money paid in good faith for disputed amounts of excess materials, and the costs associated with the expedited transfer to another contract manufacturer to produce the goods OSE failed to produce. As to the mandatory injunction claim, Freedom argues that despite a proper demand for the return of all of its Tooling, OSE has failed to return all of Freedom's property.

In response to OSE's counterclaim for breach of contract, Freedom argues that OSE's material breach of the contract absolves Freedom of all obligations under the contract. It further disputes the alleged amount outstanding on the invoices.

### III. Freedom's Breach of Contract Claim

Freedom bases its breach of contract claim on the fact that OSE strayed from their prior course of dealings. It argues that OSE had not previously "formally accepted" the POs in the four years prior to terminating the contract; OSE would simply process the order shortly after receiving a PO. Freedom argues that since it sells specialized products, the MMSA is designed to be a long term contract that provided that once the parties agreed upon a price, Freedom's submission of the PO was a formality of prior acceptance by OSE. Further, Freedom states that OSE did not previously acknowledge receipt of the POs in writing and submitted a sampling of POs that were "accepted" by OSE but not signed.

OSE argues that Freedom's reliance on the parties' course of performance with regard to the POs is irrelevant and not a basis for proving OSE's breach. It specifically relies upon language in the MMSA which states in pertinent part:

> No course of prior dealings between the parties and usage of the trade is relevant to supplement or [sic] any term used in this Agreement. *Acceptance or acquiescence in a course of performance rendered under this Agreement*

6

> *is not relevant to determining the meaning of this Agreement even though the accepting or acquiescing party had knowledge of the performance and opportunity for objection.* An amendment or modification of this Agreement will be valid and effective only if it is in writing, is signed by both Freedom and Supplier, and specifically states that it is a modification or amendment to this Agreement. Any assignment by Supplier of this Agreement or any rights in it, without the other party's advance written consent, shall be void.

MMSA § 14.2 (emphasis added). Freedom is attempting to use its course of performance with OSE to define the term "acceptance" as used in section 2.1 of the MMSA which states in pertinent part: "Upon receipt and acceptance of the Purchase Order by Supplier [OSE], Supplier shall be authorized to purchase the materials required to manufacture the Product(s) based on the quantities in Freedom's rolling ninety (90) days Purchase Orders (see Section 2.2.)."

OSE relies on the language in the Terms and Conditions of the POs to define "acceptance" as used in the MMSA. The Terms and Conditions state that

> Seller shall be bound by this purchase order and its terms and conditions when it executes and returns the acknowledgement or, when it ships any part of this order, whichever shall occur first. No contract shall exist except as herein provided.

Further OSE disputes that there was no formal acceptance process. According to Sonia Lee, OSE's Project Manager for the Freedom account, there was an acceptance process since the pricing of the products always varied based on the availability of materials needed to make the products and the quantity of the order placed by Freedom. Although in some instances, the parties agreed to prices in advance and OSE would process the orders, there were occasions where OSE would deem the pricing terms unacceptable or the quantity too small to process on the quoted price, and it would negotiate new pricing

7

terms and require Freedom to submit a revised PO. As to the rejection of the eight POs at issue, Ms. Lee asserts that Freedom placed those orders based on outdated quotations and that OSE did not have sufficient materials on hand to process the orders.

Freedom argues that the Terms and Conditions in the PO do not apply in this case since the MMSA specifically states that "[p]roducts furnished and manufacturing services rendered by Supplier to Freedom are sold or provided only on the terms and conditions stated herein. Notwithstanding any terms or conditions on any document of Freedom or the Supplier, the information and conditions on this document are controlling over Freedom and Supplier." MMSA § 14.1. Based on this language, Freedom argues that OSE's reliance is misplaced, and that although the Terms and Conditions appeared on their generic purchase order form it is irrelevant to the course of dealing between the parties.

It is well-settled under Florida law that the interpretation of a contract is generally a question of law. *PartyLite Gifts, Inc. v. MacMillan*, 895 F. Supp. 2d 1213, 1232 (M.D. Fla. 2012) (citing *Gainesville–Alachua County Reg'l Airport Auth. v. R. Hyden Constr., Inc.*, 766 So.2d 1238, 1239 (Fla. 1st DCA 2000)). The Court's determination of whether the terms of a contract are ambiguous is also a question of law. *Id*. Contract language is ambiguous "if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." *Id*. Under Florida law, extrinsic evidence is admissible regarding the intent of parties to a contract if a latent ambiguity exists. *United States on Behalf of Small Bus. Admin. v. S. Atl. Prod. Credit Ass'n,* 606 So.2d 691, 695 (Fla. 1st DCA 1992).

8

In its examination of a disputed contract provision, a court must examine the disputed terms "in the context of the entire agreement, giving the words their plain and ordinary meaning as understood by a reasonable person." *International Bhd. of Boilermakers v. Local Lodge D111 of the Cement, Lime, Gypsum and Allied Workers Div. of the Int'l Bhd. of Boilermakers*, 858 F.2d 1559, 1562 (11th Cir. 1988), *cert. denied*, 490 U.S. 1047, 109 S.Ct. 1955, 104 L.Ed.2d 424 (1989). However, if the written contract is "ambiguous so that the intent of the parties cannot be understood from an inspection of the instrument, extrinsic or parol evidence ... may be received in order to properly interpret the instrument." *Lemon v. Aspen Emerald Lakes Assocs., Ltd.*, 446 So. 2d 177 (Fla. 5th DCA 1984)).

The acceptance procedure in the MMSA contains an ambiguity since it does not specify the specific method of acceptance. Therefore, the acceptance may be oral, in writing (as asserted by OSE) or by performance (as asserted by Freedom). Throughout the parties' four year relationship there is evidence that they used all three methods to process the orders. There were several instances for example where Freedom would send the PO by e-mail and receive the completed order thereafter, but there were also times where OSE would respond to the email or call Freedom to discuss the terms and quantities, negotiate new prices and request a revised PO. Further, several of Freedom's e-mails to OSE with POs contained a phrase that requested some sort of confirmation, i.e. "please confirm at your convenience," "please let us know by tomorrow," etc.

Even assuming Freedom is correct in its assertion that OSE improperly rejected the eight POs, the evidence shows that at least some of the price quotes upon which Freedom

based those specific POs were outdated, since the quotes were only good for thirty days after issue. Although Section 14.2 states that the parties may not rely on course of performance to interpret the contract, the contract itself does not provide an alternative method to interpret the term "acceptance." At a minimum, OSE had to manifest its acceptance of the order in some fashion and the facts in the record are disputed as to whether it did so for the eight POs at issue.

Freedom asserts that OSE acknowledged and accepted the orders in a conference call on December 19, 2012. OSE disputes its acceptance during the phone conference and asserts that its first response was to reject the POs in an e-mail dated December 21, 2012. Further, OSE states the price quotes upon which the POs were based had all expired by December 19, 2012, except for one of the POs and the email containing the POs explicitly requested that OSE "review and confirm" the POs. OSE later explained that the POs were rejected because they did not have all of the materials on hand, the prices were based on volume orders and since the orders were for smaller quantities, OSE could not "commercially justify" fulfilling the orders. Therefore, there are disputed issues of material fact, and as a result the Court must deny Freedom and OSE's motions for summary judgment on Freedom's breach of contract claim.

### IV.    Freedom's Mandatory Injunction Claim

Freedom requested information relating to the Tooling and other property in OSE's possession on February 6, 2013. According to the terms of the MMSA, OSE had two weeks to return the Tooling. OSE eventually shipped some of the Tooling to Freedom on May 3, 2013. Although OSE argues that the undisputed facts show that it returned the Tooling

to Freedom, it admits in its own motion that it failed to return some of the Tooling and samples. Debra Rase, the corporate representative for Freedom, testified in her deposition that there are golden samples and other fixtures that OSE has yet to return to Freedom. OSE disputes the list of the remaining Tooling that Freedom produced in the record. Further, although Freedom asserts that it will suffer irreparable harm and there is no adequate remedy at law, it also asserts that it purchased replacement Tooling in order to have its new manufacturer produce the products that OSE refused to manufacture. Therefore, there are disputed facts as to Freedom's entitlement to a mandatory injunction. *See Legakis v. Loumpos*, 40 So. 3d 901, 903 (Fla. 2d DCA 2010) ("a mandatory injunction is proper where a clear legal right has been violated, irreparable harm has been threatened, and there is a lack of an adequate remedy at law.") *See also Verizon Wireless Pers. Communications LP v. City of Jacksonville, Fla.*, 670 F. Supp. 2d 1330, 1346 (M.D. Fla. 2009) ("Where a mandatory injunction is sought, 'courts apply a heightened standard of review; plaintiff must make a clear showing of entitlement to the relief sought or demonstrate that extreme or serious damage would result absent the relief.'") (citing *New York SMSA Ltd. Partnership v. Town of Clarkstown*, 99 F.Supp.2d 381, 389 (S.D.N.Y. 2000)).   Therefore, neither Freedom nor OSE is entitled to summary judgment as a matter of law on Freedom's injunctive relief claim.

    **V.**    **OSE's Breach of Contract Counterclaim**

The Court concludes that Freedom's motion for summary judgment on OSE's breach of contract claim should also be denied. Since the Court has not ruled as a matter of law that OSE was in material breach of the MMSA when it rejected the eight POs, it

11

cannot rule as a matter of law whether Freedom is relieved of all obligations under the MMSA including its duty to pay for products that it received. Therefore, Freedom is not entitled to summary judgment on OSE's counterclaim.

It is therefore ORDERED AND ADJUDGED that:

1. Freedom Scientific BLV Group, LLC's Motion for Summary Judgment on Orient Semiconductor Electronics, Ltd.'s Counterclaim (Dkt. #34) is DENIED.

2. Freedom Scientific BLV Group, LLC's Motion for Summary Judgment on its Claim in the Complaint, and on Orient Semiconductor Electronics, Ltd.'s Affirmative Defenses (Dkt. #35) is DENIED.

3. Defendant/Counterclaimant Orient Semiconductor Electronics, Ltd.'s Motion for Partial Summary Judgment (Dkt. #36) is DENIED.

4. Plaintiff's Motion for Leave to File a Reply Memorandum in Further Support of its Motions for Summary Judgment (Dkt. # 46) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida, this 17th day of April, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2013\13-cv-569 mpsj 36 msj 34 35.docx